**SO ORDERED.**

**SIGNED this 19 day of September, 2017.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| THOMAS EDWARD MATUSAK | 14-02032-5-SWH |
| | CHAPTER 13 |
| DEBTOR | |

### ORDER GRANTING MOTION TO MODIFY IN PART

The matter before the court is the Motion to Modify Chapter 13 Plan ("Motion") filed by Maureen E. Brown ("Ms. Brown") on November 30, 2016, Dkt. 86.  A response in opposition was filed by the Debtor on December 27, 2016, Dkt. 88.  The court previously conducted a hearing on the Motion to Modify on January 19, 2017, at which counsel for the Debtor orally moved for directed verdict based upon the alleged insufficiency of Ms. Brown's evidence.  In an Order Denying Directed Verdict regarding the Motion to Modify on May 17, 2017, Dkt. 109, the court made certain rulings and directed the setting of a final hearing.[1]  The debtor filed a supplemental response on June 20, 2017, Dkt. 116.  A hearing took place on June 22, 2017 and June 28, 2017 in Raleigh, North Carolina, at which the court took the matter under advisement.  This order serves

---

[1] By order dated September 14, 2017, the court amended the May 17, 2017 Order Denying Directed Verdict to more accurately reflect the proper procedure which resulted in the preliminary rulings made and setting of a final hearing.

1

to determine the remaining issues in light of all evidence presented at the final hearings on the Motion.

## BACKGROUND

Thomas Edward Matusak ("Mr. Matusak" or the "Debtor") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on April 9, 2014. Mr. Matusak's schedules and the claims filed indicate assets valued at $243,195.70, no secured debts, no unsecured priority debts, and unsecured nonpriority claims in the aggregate amount of $407,447.24.

On Schedule F, Mr. Matusak listed Maureen E. Brown ("Ms. Brown") as an unsecured creditor with a claim in the amount of $208,438.98. Ms. Brown and Mr. Matusak were formerly married but separated in 2009 and divorced in 2010. Ms. Brown's claim was based on a judgment entered in an action for breach of the parties' prenuptial agreement filed and concluded in the District Court of Wake County, North Carolina in December of 2013. Ms. Brown is Mr. Matusak's largest creditor.

On Schedule I, Mr. Matusak listed his anticipated gross income as $7,500 per month and noted that he is employed as a mortgage broker. This figure represented a "best guess projection," as he expected to begin new employment within the same field in May of 2014. In addition, Mr. Matusak noted that he is compensated "on pure commission – his income varies" on Schedule I. On Form B22C, Mr. Matusak listed his average current monthly income, as defined in 11 U.S.C. § 101(10A), as $1,561.32 per month. Pursuant to Form B22C's instructions and the statutory definition, this figure was calculated by averaging his "monthly income for the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing," which is commonly termed the "lookback period." As a result, based on his "current monthly income" of $1,561.32 during the lookback period, Mr. Matusak qualified as a below-median debtor in the state

2

of North Carolina, and his applicable commitment period was accordingly thirty-six months pursuant to 11 U.S.C. § 1325(b)(4)(A)(ii).

Mr. Matusak filed a chapter 13 plan on April 21, 2014, Dkt. 12, proposing to make monthly plan payments to the chapter 13 trustee in the aggregate amount of $104,700, which would result in a 36% dividend available to unsecured creditors. On September 28, 2015, Ms. Brown filed a Motion to Dismiss and Objection to Confirmation, contending that the Debtor's proposed chapter 13 plan failed to account for increases in income and decreases in expenses since the filing of the petition in April of 2014. Dkt. 69. In a response filed thereto, Mr. Matusak asserted that his plan should be confirmed, as any material changes in his financial condition could be addressed through modification pursuant to 11 U.S.C. § 1329 at a later date. Dkt. 76. Brown then withdrew her objection, and the chapter 13 trustee filed a Motion for Confirmation of Chapter 13 Plan on December 8, 2015, Dkt. 78, which provided:

> The Debtor shall pay to the Trustee aggregate payments of $104,705.20 (INCLUSIVE OF ADDITIONAL ATTORNEY FEES ADDED PER COURT ORDERS TO DATE), which amount is the "Plan Base," and such payments shall be paid as follows: $33,195.20 paid through November 2015; plus $2,000.00 for 16 months (December 2015-March 2017); plus $15,000.00 paid from Chris Graebe's Trust Account in January 2016; plus $24,510.00 for 1 month (April 2017). The Debtor's applicable commitment period under 11 U.S.C. § 1325(b)(4) is 36 months. The Debtor's plan shall not end prior to completion of the applicable commitment period unless all allowed general unsecured claims have been paid in full.

Dkt. 78 at 2. In addition, the Plan required Mr. Matusak to provide a verified and updated Schedule I or J and other financial information at any time during his applicable commitment period if so requested by Ms. Brown or the chapter 13 trustee. In an order entered on January 8, 2016, the court confirmed the Debtor's chapter 13 plan, Dkt. 83.

Mr. Matusak provided Ms. Brown with updated financial information in late 2015 and throughout 2016, including monthly pay advices and asset statements. The Debtor's state and

federal tax returns showed annual income in the amount of $120,956 for tax year 2015 (Debtor's Ex. 6C). At the hearing, Mr. Matusak provided his 2016 federal tax return, which showed income for the year in the amount of $155,371 (Debtor's Ex. 6D).

Ms. Brown filed the instant Motion on November 30, 2016 based upon the updated financial information. In the Motion, she alleges that the Debtor's increase in income constitutes a substantial and unanticipated change warranting modification of the Debtor's plan pursuant to 11 U.S.C. § 1329(a). Ms. Brown specifically requests the court to order an increase in the monthly plan payment amount and an extension of the plan period from thirty-six months to sixty months so as to increase the dividend paid to unsecured creditors. In his Response, Mr. Matusak contends that the changes in his circumstances fail to meet the standard necessary for chapter 13 plan modification in this district. In the alternative, in the Supplemental Response, the Debtor states that the court lacks authority to modify the chapter 13 plan whatsoever, as he remitted his final chapter 13 monthly plan payment in April of 2017 prior to a full hearing on the Motion, thereby requiring the court to immediately grant the Debtor's discharge under 11 U.S.C. § 1328(a). In its May 17, 2017 Order, the court found that Ms. Brown has shown that the change in income was substantial and the court deemed that, based upon the conduct of the debtor, the "unanticipated" prong of the *Arnold* test had been satisfied.[2]

The issues before the court are, therefore: (1) whether the court may enter an order modifying a confirmed chapter 13 plan pursuant to 11 U.S.C. § 1329(a) after all required payments have been made, notwithstanding the timing of the motion; (2) whether the monthly plan payment

---

[2] As the court explained at the hearing on June 22, 2017, the debtor could rebut both prongs of the *Arnold* test during the final hearing.

4

should be increased based upon his additional income to provide a higher distribution to unsecured creditors; and (3) whether the plan period should be extended from thirty-six to sixty months.

## DISCUSSION

### A. Timeliness of Motion to Modify

The court first considers whether it has authority to order modification of the Debtor's chapter 13 plan, given the filing of Ms. Brown's Motion thirty-one months into the case. Mr. Matusak contends that because a full hearing on the merits of the Motion was held after he submitted his final plan payment to the chapter 13 trustee, the court should not consider modification and should instead immediately grant his discharge.

Section 1329(a) of the Bankruptcy Code clearly provides that a request for modification of a debtor's chapter 13 plan may be made "[a]t any time after confirmation of the plan but before the completion of payments under such plan . . . ." 11 U.S.C. § 1329(a). Upon the timely filing of a request for modification, "the completion of the plan and eventual discharge of the debtor is stayed until the bankruptcy court is allowed to consider the modification on its merits." *In re Meza*, 467 F.3d 874, 880 (5th Cir. 2006); *see also In re Drew*, 325 B.R. 765, 770 (Bankr. N.D. Ill. 2005) (finding that "[f]or purposes of § 1329, timing of the motion is critical and it must be filed before a debtor has completed payments under the confirmed plan"). The date of the filing of a motion to modify is therefore the controlling point in time. To hold otherwise would place the movant at the mercy of the court's calendar.

In this case, on the date of filing of Ms. Brown's Motion, five monthly plan payments remained due from Mr. Matusak to the chapter 13 trustee. The Debtor's plan payments were incomplete. Ms. Brown's Motion was therefore timely filed in accordance with the statute, and her request to modify the plan is properly before the court.

5

**B. Modification of a Confirmed Chapter 13 Plan**

A confirmed chapter 13 plan is binding as to a debtor and his creditors. 11 U.S.C. § 1327(a). However, Section 1329(a) of the Bankruptcy Code provides for modification of a chapter 13 plan following confirmation for specifically enumerated purposes, and the moving party seeking modification bears the burden of proof. Section 1329(a) states:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time for such payments; [or]
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan . . . .
>
> * * *
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

11 U.S.C. § 1329(a).

Evaluating whether chapter 13 plan modification is warranted is a multi-step process. Specifically, a bankruptcy court must "first determine if the debtor experienced a 'substantial' and 'unanticipated' change in his post-confirmation financial condition," which serves to "inform the bankruptcy court on the question of whether the doctrine of *res judicata* prevents modification of the confirmed plan." *In re Murphy*, 474 F.3d 143, 150 (4th Cir. 2007) (citations omitted). If the requisite change is established, the court may then proceed to consider whether the plan modification is for one of the purposes enumerated in 1329(a). If answered affirmatively, the court must finally consider whether the proposed modification conforms to 1329(b). In short, "[t]o summarize, in order to justify the modification of a confirmed plan, the movant must demonstrate:

6

(1) a substantial and unanticipated change in circumstance; (2) that the modification is for one of the purposes listed in § 1329(a); and (3) that the proposed modification will comply with § 1329(b)." *In re Williams*, No. 14-00793-5-JNC, 2016 WL 4069776, *1 (Bankr. E.D.N.C. July 28, 2016); *see also In re Smith*, No. 14-02611-5-SWH, 2016 WL 3232728 (Bankr. E.D.N.C. June 3, 2016) (applying the three-part test contained in *Murphy* and explaining that all three parts must be satisfied in order to justify modification).

Accordingly, the court will first determine whether Mr. Matusak's increase in income was substantial and unanticipated.[3] Courts have fashioned different standards as to what constitutes a "substantial" increase in income. *See In re Arnold*, 869 F.2d 240, 242 (finding that the debtor's increase in annual income from $80,000 to $200,000 was substantial); *see also In re Swain*, 509 B.R. 22, 27 (Bankr. E.D. Va. 2014) (finding "an increase [in income] of nearly 50% since the plan was confirmed" to be substantial). Here, Mr. Matusak's annual income was approximately $90,000 during 2014 following the filing of the petition. His taxable income was $120,956 in 2015 and $155,371 in 2016. As a result, Mr. Matusak experienced an approximately 73% increase in income following the filing of the petition and a 28.5% increase in income following confirmation. The debtor did not rebut these numbers at the final hearing and thus the court finds this increase in income to be substantial.

The court will next consider whether the increase in Mr. Matusak's income was unanticipated. To do so, a court must evaluate "whether a debtor's altered financial circumstances could have been reasonably anticipated at the time of confirmation by the parties seeking

---

[3] The court's Order Denying Directed Verdict found that Ms. Brown satisfied her initial burden under 11 U.S.C. § 1329 based on the evidence presented at the preliminary hearing and concluded that it would be "inequitable not to allow modification." Dkt. 109 at 7. However, the manner of modification and extent to which the plan was to be modified remained at issue, which necessitated a full factual hearing. Additionally, the debtor was invited to present evidence to rebut the initial findings.

7

modification." *In re Fitak*, 92 B.R. 243, 250 (Bankr. S.D. Ohio 1988). In this case, Mr. Matusak earns his income on a commission basis. As a result, and as is true with all employees paid on commission, his income varies greatly from month to month and during different seasons of the year. Such variation is certainly anticipated given the nature of his employment. In addition, Ms. Brown is acutely familiar with Mr. Matusak's pay structure and its resulting fluctuation as his former spouse and as an employee in the same field. Accordingly, the post-petition increase in Mr. Matusak's income could have been anticipated by all parties.[4]

Because Mr. Matusak's increase in income could have been anticipated, the two-part standard set forth in *Arnold* and reiterated in *Murphy* is not satisfied. However, in withdrawing her objection to confirmation, Ms. Brown relied upon Mr. Matusak's representation that the chapter 13 plan could be modified at a later date if warranted. As the court previously explained in its May 17, 2017 order, "judicial estoppel precludes the debtor from changing his position to block his ex-wife from seeking modification, where he previously invited her . . . to invoke § 1329" in response to her objection and motion to dismiss. Dkt. 109. Finally, the parties themselves provided for updated financials throughout the plan period upon the request of Ms. Brown, implying that she would be able to seek modification should those financials so support. At the final hearing, the debtor presented no evidence to rebut the court's initial conclusion, and thus modification will be allowed. As a result, the court again relies upon equity to require Mr. Matusak to commit additional disposable income to his chapter 13 plan for the five months remaining in his applicable commitment period after the Motion was filed.

---

[4] Because the court finds that the "unanticipated" prong of the *Arnold* test is satisfied as a result of representations made by the debtor prior to confirmation of his plan, it will not here opine on whether the plan of a debtor whose income is commission-derived can ever be modified under § 1329.

8

Mr. Matusak provided updated financial information for 2016 to the court in Debtor's Exhibit 6B. The court will specifically consider his income and expenses for the period of January 1, 2016 to the date of the filing of the Motion on November 30, 2016, as Ms. Brown based her Motion to Modify upon this information. During the relevant period, Mr. Matusak's average net monthly income was $7,593.50, and his average monthly expenses were $5,858.91 (which includes his monthly plan payment of $2,000 to the chapter 13 trustee). The difference between his average monthly net income and average monthly expenses is $1,734.59. This represents additional disposable income that should be committed to his chapter 13 plan for the remaining five months of his applicable commitment period. This modification serves to "increase . . . the amount of payments on claims of a particular class provided for in the plan" (the general unsecured creditors) pursuant to 11 U.S.C. 1329(a)(1).

## C. Extension of Chapter 13 Plan Term

The court will next consider, in its discretion, whether to extend the Debtor's plan term from thirty-six months to sixty months pursuant to 11 U.S.C. § 1329(c). Section 1329(c) provides:

> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, *unless the court, for cause, approves a longer period*, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329(c) (emphasis added). The determination of whether cause for extension exists is determined at the discretion of the court on a case-by-case basis. *Arnold*, 869 F.2d at 244. However, providing unsecured creditors with an increased dividend is insufficient on its own to constitute "cause" under § 1329(c). *In re Karayan*, 82 B.R. 541, 544 (Bankr. C.D. Cal. 1988) (explaining that "[c]ourts should not use the issue of plan extension to coerce debtors to do something for unsecured creditors that is not required").

9

In this case, Ms. Brown's sole basis to extend Mr. Matusak's plan term is to increase the pool of funds available for distribution to unsecured creditors. The court is not persuaded that this basis alone is sufficient and finds that no cause exists to extend the plan term. Nothing in the Bankruptcy Code requires a chapter 13 debtor to pay unsecured creditors in excess of the amount they would receive "if the estate of the debtor were liquidated." 11 U.S.C. § 1325(a)(4). Here, Mr. Matsuak remitted a total of $104,705.20 to the chapter 13 trustee, although the liquidation test only required payments in the aggregate amount of $96,163.65, Dkt. 12. Furthermore, Mr. Matusak has exemplified qualities of an honest and forthright debtor, including diligently remitting all chapter 13 plan payments on time, even during months in which his income decreased significantly.

Finally, a debtor's applicable commitment period is set at the time of the filing of a petition pursuant to § 1325(b)(4) and is based on a debtor's "current monthly income" as defined in § 101(10A). Current monthly income is defined as "the average monthly income from all sources that the debtor receives . . . derived during the 6-month period ending on – (i) the last day of the calendar monthly immediately preceding the date of the commencement of the case . . . ." 11 U.S.C. § 101(10A)(i). Pursuant to the statutory definition, a debtor's "current monthly income" does not fluctuate, as it is fixed on the petition date and determined by averaging a debtor's income over the six months period preceding the petition. Here, Mr. Matusak's applicable commitment period of thirty-six months was properly calculated and determined. Ms. Brown withdrew her Objection to confirmation of the Plan in late 2015, despite being on notice of Mr. Matusak's increased earnings, and therefore agreed to the treatment contained therein, including the applicable commitment period. The court declines to exercise its discretion to increase the applicable commitment period under these circumstances.

## CONCLUSION

Based on the foregoing, the Motion to Modify is ALLOWED IN PART and DENIED IN PART. The Debtor is directed to remit five (5) payments in the amount $1,734.59, for a total of $8,672.95 to the chapter 13 trustee on or before February 28, 2018.  Upon receipt of each payment, the chapter 13 trustee is directed to file notice of receipt of funds with the court.  No discharge shall be entered until the five payments are received and distributed by the chapter 13 trustee. Nothing contained herein shall prevent Mr. Matusak from remitting a single lump sum payment in the aggregate amount of $8,672.95 to the chapter 13 trustee in lieu of making installment payments.

## END OF DOCUMENT